**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
(212) 209-4800
David J. Molton
May Orenstein
Daniel J. Saval
Kerry Quinn

*Attorneys for the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 15 Case** |
| | ) | |
| **Fairfield Sentry Limited, et al.,** | ) | **Case No. 10-13164 (BRL)** |
| | ) | |
| **Debtors in Foreign Proceedings.** | ) | **Jointly Administered** |
| | ) | |
| | ) | |
| | ) | |
| **Fairfield Sentry Limited, et al. (In Official Liquidation), acting by and through the Foreign Representatives Thereof,** | ) ) ) | **Adv. Pro. No. 10-03802 (BRL)** |
| | ) | |
| **Plaintiffs,** | ) | **Complaint** |
| | ) | |
| **-against-** | ) | |
| | ) | |
| **Pictet & Cie and Beneficial Owners of the Accounts Held in the Name of Pictet & Cie 1-1000,** | ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

Plaintiffs Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited

("Sigma", and collectively, the "Funds"), acting by and through Kenneth Krys and Joanna Lau,

in their capacities as the duly appointed liquidators and foreign representatives (together with

their predecessors, the "Foreign Representatives") of the liquidation proceedings of the Funds,

pending before the Commercial Division of the High Court of Justice, British Virgin Islands (the

"BVI Court"), through their attorneys Brown Rudnick LLP, for the complaint against

Defendants, allege the following based on personal knowledge or information derived from their

books and records or from other sources, including, *inter alia*, court filings and statements of

governmental agencies and other parties.

## PRELIMINARY STATEMENT

1.      This action and similar actions brought on behalf of and for the Funds by the

Foreign Representatives have been commenced by the Foreign Representatives, with the

approval of the BVI Court, to recover payments made by the Funds for the redemption of Sentry

and Sigma shares prior to December 2008.   Sentry and Sigma, along with their affiliate fund,

Fairfield Lambda Limited ("Lambda"), were created as a means for private investment in

managed accounts established with Bernard L. Madoff Investment Securities LLC ("BLMIS"), a

broker dealer purportedly providing investment advisory services.   Following revelations in

December 2008 that Bernard L. Madoff ("Madoff"), the proprietor of BLMIS, had been

operating a Ponzi scheme, the Funds were involuntarily put into liquidation in proceedings

commenced in the Commercial Division of the High Court of Justice, British Virgin Islands.

2.      From the Funds' inception until the disclosure of Madoff's fraud, substantially all

investor funds, net of fees and expenses, raised by Sentry and Sigma through the sale of shares

were transferred to BLMIS for investment in accounts managed by Madoff.   Prior to December

2008, the voting, participating shares of Sentry, $.01 par value per share, and Sigma, €01 par

value per share, (the "Shares") were redeemable in accordance with their terms for a price equal

to their "Net Asset Value."   Net Asset Value was to be determined, in accordance with

applicable accounting standards, as the value of the respective assets of Sentry and Sigma

divided by the number of shares outstanding in each fund, net of certain expenses ("Net Asset Value"). From time to time, in order to make payments believed by the Funds to be due upon redemption of Shares ("Redemption Payments"), the Funds made withdrawals from their BLMIS accounts.

3.      At all relevant times, the Funds believed payments received by them from BLMIS were the proceeds from the sale of securities held by BLMIS for the accounts of the Funds. The Funds furthermore believed that the amount, per share, paid by them for each Share redeemed was equal to the per share Net Asset Value.

4.      At all relevant times, the Funds were mistaken both as to the source of the funds received by them from BLMIS and the value and existence of assets held for the Funds' accounts by BLMIS. Upon information and belief, none of the securities shown on statements provided to the Funds by BLMIS as being held for their accounts existed in fact. Furthermore, upon information and belief, amounts withdrawn by the Funds from their accounts with BLMIS, believed by the Funds to be the proceeds from the sale of securities held by BLMIS for the Funds, were, in fact, derived from amounts obtained by BLMIS from deposits made by the Funds, or from other investors and customers of BLMIS. As a result of these mistakes, at all relevant times, the Net Asset Value of each Share redeemed was miscalculated, and Redemption Payments were mistakenly made for amounts far in excess of the actual Net Asset Value of Shares redeemed.

5.      During the period from and after April 20, 2004, through October 20, 2008, the Funds made Redemption Payments aggregating USD $20,810,628.20 to Defendant Pictet & Cie ("Pictet & Cie"). At the time such payments were made, the Funds mistakenly believed that such payments were in the amount of the Net Asset Value of the Shares tendered at the time of

redemption.  In fact, however, the Redemption Payments made to Pictet & Cie far exceeded the actual Net Asset Value of the Shares redeemed.  Moreover, to the extent that the funds used to pay such Redemption Payments were made with amounts that had been withdrawn by the Funds from their BLMIS accounts, such amounts were not, as the Funds believed them to be, proceeds of the liquidation of securities held for their accounts.  On information and belief, any amounts obtained by the Funds from BLMIS to make Redemption Payments to Pictet & Cie were obtained from Sentry and Sigma investors other than Pictet & Cie or other investors who had made deposits, directly or indirectly, with BLMIS.

6.     Upon information and belief, Pictet & Cie has either retained the Redemption Payments made to it by the Funds for its own account and benefit or, alternatively, paid all or some portion of such payments to or for the account of persons or entities for whom Pictet & Cie may have subscribed for shares of the Funds in the capacity of trustee, agent, representative, nominee or custodian.

7.     In December 2008, it became known to the Funds that BLMIS had been operated for many years by Madoff as a massive Ponzi scheme and that account statements rendered by BLMIS prior to December 2008, showing that the Funds had securities having a market value in excess of $6 billion on account with BLMIS, were entirely fictitious.  Following the revelation of the fraud, the Funds' board of directors suspended any further redemptions of the Funds' shares and the calculation of the Net Asset Value.  As of December 2008 and presently, Sentry and Sigma have, respectively, approximately 4.7 million and 3.9 million shares outstanding.

8.     The Funds' actual assets are estimated to be far less than the amount needed by the Funds to satisfy claims that have been or may be asserted against them.  Irving H. Picard, the Trustee appointed by the United States District Court for the Southern District of New York for

the liquidation of BLMIS (the "BLMIS Trustee"), has asserted claims against Sentry in an adversary proceeding pending before the United States Bankruptcy Court of the Southern District of New York, <u>Picard v. Fairfield Sentry Limited, et al.</u>, No. 08-01789 (BRL) (the "BLMIS Adversary Proceeding"). Pursuant to the complaint filed in the BLMIS Adversary Proceedings, the BLMIS Trustee seeks recovery from Sentry of approximately $3.2 billion transferred to it from BLMIS, which funds, the BLMIS Trustee alleges, were the misappropriated assets of other direct and indirect investors of BLMIS. A substantial amount of such transferred funds were applied by Sentry to the making of Redemption Payments.

9.      Unless Redemption Payments mistakenly paid to shareholders are recovered by the Funds, they will be unable to satisfy their liabilities and claims that have been made or are expected to be made against them. Moreover, to the extent such liabilities and claims must be satisfied solely from the Funds' current assets, the Defendants will have been unjustly enriched since they will not bear their proportionate share of such liabilities and claims, but rather Defendants would retain a windfall at the expense of other shareholders, claimants and creditors of the Funds.

## JURISDICTION AND VENUE

10.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1334(b), as this adversary proceeding arises under, arises in and/or relates to the Chapter 15 proceedings of the above-captioned Debtors, <u>In re Fairfield Sentry Limited, et al.</u>, No. 10-13164 (BRL), pending in this Court. Additionally, pursuant to section 78eee(b)(2)(A)(iii) of the Securities Investor Protection Act ("SIPA"), which incorporates 28 U.S.C. § 1334(b) and applicable provisions of Title 11 of the United States Code, jurisdiction is also proper in this Court because this action also relates to the consolidated liquidation proceedings of Bernard L. Madoff Investment

Securities LLC and Bernard L. Madoff, pending in this Court under the caption <u>Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC</u>, SIPA Liquidation No. 08-1789 (BRL).  Pursuant to the standing order of reference of the United States District Court for the Southern District of New York, dated July 10, 1984, all proceedings arising in, arising under and/or related to cases under Title 11 of the United States Code (as amended, the "Bankruptcy Code") are referred to this Court for adjudication.

11.     This is a core proceeding under 28 U.S.C. §§ 157(b)(2).  Should the Court determine this to be a non-core proceeding, Plaintiff consents to entry of final judgment and order by this Court.

12.     This Court has jurisdiction over Pictet & Cie and any Beneficial Shareholders pursuant to Rules 7004(d) and (f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") because Pictet & Cie and the Beneficial Shareholders, on information and belief, conducted investment transactions from within or directed to the United States.

13.     Moreover, this Court has jurisdiction over Pictet & Cie and any Beneficial Shareholders by virtue of the legally binding and valid agreements and representations set forth in one or more Subscription Agreements Pictet & Cie entered into with the Sentry (collectively, the "Subscription Agreement").

14.     The Subscription Agreement provides for, *inter alia*, the irrevocable submission by Pictet & Cie to the jurisdiction of the New York courts with respect to any proceeding in respect of Sentry and Pictet & Cie's consent to service of process by the mailing of such process to Pictet & Cie.  Furthermore, by executing the Subscription Agreement, Pictet & Cie agreed to all terms and conditions contained therein, including the express provision that any agreement made by Pictet & Cie in the Subscription Agreement would also apply to any other person for

whom Pictet & Cie was subscribing as trustee, agent, representative, or nominee – i.e., all Beneficial Shareholders.  Moreover, by executing the Subscription Agreement, Pictet & Cie represented that it had all requisite authority from Beneficial Shareholders to execute and perform any and all obligations on their behalf, and also agreed to indemnify Sentry for any damages resulting from an assertion by a Beneficial Shareholder that Pictet & Cie lacked proper authorization to enter into the Subscription Agreement or perform the obligations thereof.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## PARTIES

16.     Sentry, a British Virgin Islands company, was organized in 1990 under the International Business Company Act of the British Virgin Islands and was subsequently re-registered as a business company under the BVI Business Companies Act 2004. Sentry's registered agent is Codan Trust company (B.V.I.) located at Romasco Place, Wickhams Cay 1, Road Town, Tortola, BVI.  Sentry is currently in liquidation in proceedings commenced on April 21, 2009 in the BVI Court.

17.     Sigma, a British Virgin Islands company, was organized in 1990 under the International Business Company Act of the British Virgin Islands and was subsequently re-registered as a business company under the BVI Business Companies Act 2004. Sigma's registered agent is Codan Trust company (B.V.I.) located at Romasco Place, Wickhams Cay 1, Road Town, Tortola, BVI.  Sigma is currently in liquidation in proceedings commenced on April 21, 2009, in the BVI Court.  This action and other similar actions brought on behalf of and for the Funds, as well as their related fund, Fairfield Lambda Limited, by the Foreign Representatives have been commenced by the Foreign Representatives with the authorization of the BVI Court.

18.     Defendant Pictet & Cie was, at all relevant times, a registered holder of Shares. Upon information and belief, Pictet & Cie is a corporate entity organized under the laws of Switzerland and having its registered address at Route des Acacias 60, 1211 Geneve 73, Switzerland.  Pictet & Cie subscribed for the purchase of Shares by entering into one or more Subscription Agreements with Sentry (collectively, the "Subscription Agreement").   All purchases of Shares by Pictet & Cie were subject to the terms of the Subscription Agreement.

19.     Defendants "Beneficial Owners of the Accounts Held in the Name of Pictet & Cie 1-1000" are any persons or entities having a beneficial ownership or interests in Shares of Sentry issued to Pictet & Cie and on whose behalf Pictet & Cie was acting as trustee, agent, representative, or nominee (individually, a "Beneficial Shareholder" and collectively, "Beneficial Shareholders").

## NOTICE PURSUANT TO FED. R. CIV. P. 44.1

20.     Issues to be resolved in this case may be determined to be governed by the laws of the British Virgin Islands.  In that event, Plaintiffs intend to rely upon the applicable laws of that territory.

## FACTUAL ALLEGATIONS

21.     Sentry was the largest of all so-called "feeder funds" to maintain accounts with BLMIS.  Sigma and Lambda were indirect BLMIS feeder funds established for foreign currency (respectively, Euro and Swiss franc) investment through purchase of shares of Sentry.  Sentry's account statements with BLMIS as of the end of October 2008 showed in excess of $6 billion of assets supposedly held by BLMIS.  As stated in its offering materials, Sentry's investment objective was to achieve capital appreciation of its assets primarily through investments in

8

BLMIS.  Sentry raised funds for investment in BLMIS by selling its Shares, which were listed on the Irish Stock Exchange in Dublin, to qualified investors.

22.    Substantially all of the funds (some 95%) raised by Sentry from sales of its Shares, net of fees and expenses, were turned over to BLMIS, and supposedly credited to accounts held in the name of Sentry with BLMIS, purportedly for use in a split-strike conversion investment strategy.  In accordance with the Funds' Articles of Association and other relevant documents governing the Funds and their Shares, from time to time, the Funds paid to shareholders, for each Share tendered for redemption, an amount that was based on the Funds' Net Asset Value, as it was then calculated.

23.    In calculating Net Asset Value, the Funds used and relied upon account statements rendered from time to time by BLMIS purportedly showing securities or interests or rights in securities held by BLMIS for the account of Sentry.  Generally, all securities identified on BLMIS account statements were traded on public exchanges and had readily ascertainable market values.

24.    Upon information and belief, the purchases and sales of securities and other transactions shown on the account statements provided by BLMIS as having been made for the account of Sentry never in fact occurred and no investments were ever made by BLMIS for the account of Sentry.  Upon information and belief, all assets shown on BLMIS account statements rendered to the Funds were entirely fictitious.  Further, upon information and belief, amounts deposited by the Funds with BLMIS for the purchase of securities to be held by BLMIS for the account of Sentry were used by Madoff to pay requests for payments or redemptions from other BLMIS account holders or were misappropriated by Madoff for other unauthorized uses.

25.    From time to time, to make Redemption Payments, the Funds requested payments from BLMIS.  The Funds believed that the amounts provided to it in response to such requests represented proceeds from the sale or liquidation of securities or positions held for the account of Sentry.    Upon information and belief, however, payments made by BLMIS purportedly representing the proceeds of securities transactions were in fact deposits made with BLMIS by the Funds and/or other investors with BLMIS.

26.    During the period from and after April 20, 2004, through October 20, 2008, Pictet & Cie received Redemption Payments totaling USD $20,810,628.20 from the Funds in respect of Shares tendered for redemption.  The dates and amounts of each Redemption Payment received by Pictet & Cie from Sentry are set forth on Exhibit A.  The dates and amounts of each Redemption Payment received by Pictet & Cie from Sigma are set forth on Exhibit B.  Pictet & Cie did not provide valuable consideration to the Funds in exchange for the Redemption Payments received by it.  Upon information and belief, Pictet & Cie and/or the Beneficial Shareholders received and retained Redemption Payments in excess of amounts paid by such person(s) for purchase of their Shares.

27.    On December 11, 2008, the FBI arrested Madoff for violation of federal securities laws.  On that same day, the United States Attorney brought criminal charges against Madoff, alleging that Madoff ran a multi-billion dollar Ponzi scheme.  United States v. Madoff, No. O8-mj-2735 (S.D.N.Y. filed Dec. 11, 2008).  Upon arrest, Madoff was reported to have told the agents that "there is no innocent explanation" for the fraudulent scheme he had orchestrated and confessed that he "paid investors with money that wasn't there." Although Madoff had purported to invest funds obtained from investors and feeder funds in securities, in reality, funds obtained from investors were not used to purchase securities.  Instead, new funds obtained from investors,

including amounts obtained from Sentry and Sigma, were misappropriated by Madoff and used to fund withdrawals from accounts held by other investors with BLMIS, including Sentry.  In March 2009, Madoff pleaded guilty to the criminal charges brought against him, and he is now serving a 150-year sentence in federal prison.

28.    On December 11, 2008, the United States Securities and Exchange Commission ("SEC") filed an emergency action in the Southern District of New York to halt ongoing fraudulent offerings of securities and investment advisory fraud by Madoff and BLMIS.  SEC v. Madoff, No. 08-cv-10791 (S.D.N.Y. filed Dec. 11, 2008).  On February 9, 2009, the SEC submitted to the Court a proposed partial judgment, to which Madoff consented, imposing a permanent injunction and continuing relief against him, including a permanent freezing of his assets.

29.    Following the revelation of the fraud, the Funds' boards of directors suspended any further redemptions of Sentry or Sigma shares and the calculation of the Net Asset Value. As of December 2008 and presently, Sentry and Sigma had, respectively, approximately 4.7 million and 3.9 million shares outstanding.

30.    On December 15, 2008, a trustee was appointed for the liquidation of the BLMIS estate.  Proceedings for such liquidation are pending in the Bankruptcy Court for the Southern District of New York under the caption Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC, SIPA Liquidation No. 08-1789 (BRL).

31.    On May 18, 2009, the BLMIS Trustee commenced the BLMIS Adversary Proceeding against Sentry and other defendants.  In the BLMIS Adversary Proceeding, the BLMIS Trustee seeks to recover approximately $3.5 billion from Sentry and others on account of transfers that BLMIS allegedly made to Sentry and other persons during the six year period

preceding the filing of the BLMIS liquidation proceedings. These transfers are alleged by the BLMIS Trustee to have been preferential transfers under Section 547 of the Bankruptcy Code and/or fraudulent transfers under Sections 544 and 548 of the Bankruptcy Code and applicable state law. The BLMIS Adversary Proceeding is currently pending and the claims asserted therein are unresolved.

32.     On April 21, 2009, shareholders of Sentry and Sigma applied to the BVI Court for the appointment of a liquidator over each of Sentry and Sigma. On July 21, 2009, Messrs. Kenneth Krys and Christopher Stride were appointed by the BVI Court as the joint liquidators of Sentry and Sigma in their separate liquidation proceedings, under Matter Nos. BVIHCV2009/136 and BVIHCV2009/139, respectively, which are currently pending before the BVI Court under Part VI, titled "Liquidation," of the Insolvency Act, 2003 of the BVI. Effective on September 8, 2010, in accordance with BVI law, Christopher Stride resigned from his position as official liquidator for Sentry and Sigma and was replaced by Ms. Joanna Lau, who now serves, along with Mr. Krys, as joint liquidators and the Foreign Representatives of and for Sentry and Sigma.

33.     Upon appointment, the Foreign Representatives obtained, among other things, custody and control of the Funds' assets, the power to do all acts and execute, in the name and on behalf of the Funds, any deeds, receipts or other documents, and the power to compromise claims, commence litigation and to dispose of property on behalf of the Funds.

34.     Acting in accordance with authority afforded to them as Foreign Representatives, and with the consent of the BVI Court, the Foreign Representatives authorized this and similar actions against redeeming shareholders to be commenced for and in the name of the Funds.

## FIRST CLAIM
### *(Unjust Enrichment- Against Pictet & Cie)*

35.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 34 above as if set forth herein.

36.     As alleged above, to the extent amounts were withdrawn from BLMIS to make Redemption Payments to Pictet & Cie, such withdrawn funds consisted of funds deposited with BLMIS by the Funds and other investors and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

37.     Pictet & Cie did not provide valuable consideration to the Funds in exchange for the Redemption Payments received by it.

38.     Upon information and belief, Pictet & Cie received and retained Redemption Payments in excess of amounts paid by it for the purchase of Shares.

39.     By reason of its receipt of funds deposited by other investors with BLMIS, Pictet & Cie has been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

40.     It would offend principles of equity and good conscience to permit Pictet & Cie to retain the Redemption Payments it received from the Funds.

41.     Sentry is entitled to recover from Pictet & Cie a sum equal to the Redemption Payments received by it from the Funds.

## SECOND CLAIM
### *(Unjust Enrichment- Against Beneficial Shareholders)*

42.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 41 above as if set forth herein.

43.     Upon information and belief, Pictet & Cie may have subscribed to all or some portion of the Shares issued to it under the Subscription Agreement in the capacity of trustee, agent, representative, or nominee for Beneficial Shareholders.

44.     Upon information and belief, Pictet & Cie may have paid to or credited some or all of the Redemptions Payments received by it to accounts of Beneficial Shareholders.  As alleged above, any payments received by Beneficial Shareholders upon the redemption of Shares issued to Pictet & Cie consisted of funds invested with BLMIS by the Funds and other investors and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

45.     The Beneficial Shareholders did not provide valuable consideration to the Funds in exchange for the Redemption Payments received by them.

46.     Upon information and belief, some or all of the Beneficial Shareholders  received and retained Redemption Payments in excess of amounts paid by it for the purchase of  Shares. To the extent that a Beneficial Shareholder received any portion of the Redemption Payments paid to Pictet & Cie in its capacity as trustee, agent, representative, or nominee for a Beneficial Shareholder, such Beneficial Shareholder has been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

47.     It would offend principles of equity and good conscience to permit any Beneficial Shareholders to retain the Redemption Payments made by the Funds.

48.     The Funds are entitled to recover from any Beneficial Shareholders a sum equal to the portion of any Redemption Payments received by them in respect of their interests in Shares of the Funds held by them through Pictet & Cie.

## THIRD CLAIM
### *(Money Had and Received-Against Pictet & Cie)*

49.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 48 above as if set forth herein.

50.     As alleged above, the Redemption Payments received by Pictet & Cie upon the tender of Shares consisted of amounts deposited with BLMIS by the Funds and other investors to BLMIS and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

51.     By reason of its receipt of funds representing the deposits with BLMIS of the Funds and other investors, Pictet & Cie has been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

52.     Furthermore, Pictet & Cie was not entitled to receive the Redemption Payments because the amounts of the Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received by Pictet & Cie for its redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

53.     To the extent that Redemption Payments are not recovered by the Funds, the loss will be disproportionately and unjustly borne by the Funds, their creditors and the current holders of shares in the Funds.

54.     It would offend principles of equity and good conscience to permit Pictet & Cie to retain the Redemption Payments it received from the Funds.

55.    By reason of the foregoing, the Funds are entitled to recover from Pictet & Cie a sum in an amount equal to the Redemption Payments.

**FOURTH CLAIM**
***(Money Had and Received-Against Beneficial Shareholders)***

56.    The Funds repeat and allege again the allegations contained in paragraphs 1 through 55 above as if set forth herein.

57.    Upon information and belief, Pictet & Cie may have subscribed to all or some portion of the Shares issued to it under the Subscription Agreement in the capacity of trustee, agent, representative, or nominee for Beneficial Shareholders.

58.    Upon information and belief, Pictet & Cie may have paid to or credited some or all of the Redemptions Payments received by it to accounts of Beneficial Shareholders.  As alleged above, any payments received by Beneficial Shareholder upon the redemption of Shares issued to Pictet & Cie consisted of amounts deposited with BLMIS by the Funds or by other investors and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

59.    The Beneficial Shareholders did not provide valuable consideration to the Funds in exchange for Redemption Payments received by them.

60.    Upon information and belief, some or all of the Beneficial Shareholders  received and retained Redemption Payments in excess of amounts paid by them for the purchase of Shares.

61.    To the extent that a Beneficial Shareholder received any portion of the Redemption Payments paid to Pictet & Cie in its capacity as trustee, agent, representative, or nominee for Beneficial Shareholders, such Beneficial Shareholders have been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

16

62.     Furthermore, Beneficial Shareholders were not entitled to receive any portion of the Redemption Payments paid to Pictet & Cie upon the redemption of Shares issued to it in its capacity as trustee, agent, representative, or nominee for Beneficial Shareholders because the amounts transferred by the Funds with respect to Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received for redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

63.     To the extent the Redemption Payments are not recovered by the Funds, the loss will be disproportionately and unjustly borne solely by the Funds, their creditors and the current holders of Shares in the Funds.

64.     It would offend principles of equity and good conscience to permit Beneficial Shareholders to retain the Redemption Payments made by the Funds.

65.     By reason of the foregoing, the Funds are entitled to recover from Beneficial Shareholders a sum equal to the portion of any Redemption Payments received by them in respect of their interests in Shares of the Funds held for them through Pictet & Cie.

## FIFTH CLAIM
### (Mistaken Payment-Against Pictet & Cie)

66.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 65 above as if set forth herein.

67.     As described above, the Funds made each of the Redemption Payments to Pictet & Cie under the mistaken belief that the amounts paid to Pictet & Cie represented the proceeds of the sale of securities held for Sentry in accounts established with BLMIS.

68.     Upon information and belief, however, BLMIS did not hold any securities or interests of securities on account for Sentry and the payments made by BLMIS to Sentry to fund

17

Redemption Payments to Pictet & Cie represented, in fact, funds deposited with BLMIS by the Funds and other investors.

69.     The Redemption Payments, while benefiting Pictet & Cie, were made to the detriment of the Funds, their creditors and the current holders of their Shares.

70.     Additionally, Pictet & Cie was not entitled to receive the Redemption Payments because, as was unknown to the Funds, the amounts transferred by the Funds with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received by Pictet & Cie for its redemption of Shares to be in excess of the actual Net Asset Value of such Shares.  In these circumstances, the Redemption Payments should be returned for the benefit of the Funds, their creditors and the current holders of Shares in the Funds.

71.     Pictet & Cie did not provide valuable consideration to the Funds in exchange for the Redemption Payments received by it.

72.     Upon information and belief, Pictet & Cie received and retained Redemption Payments in excess of amounts paid by it for the purchase of  Shares.

73.     To the extent the Redemption Payments are not recovered by the Funds, the loss will be disproportionately and unjustly borne solely by the Funds, their creditors and the current holders of Shares in the Funds.

74.     It would thus offend principles of equity and good conscience to permit Pictet & Cie to retain the Redemption Payments.

75.     By reason of the foregoing, the Funds are entitled to recover from Pictet & Cie a sum in an amount equal to the Redemption Payments.

## SIXTH CLAIM
### *(Mistaken Payment-Against Beneficial Holders)*

76.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 75 above as if set forth herein.

77.     As described above, the Funds made each of the Redemption Payments to Pictet & Cie under the mistaken belief that the amounts paid to Pictet & Cie represented the proceeds of the sale of securities held for Sentry in accounts established with BLMIS.

78.     However, upon information and belief, BLMIS did not hold any securities or interests of securities on account for Sentry and the payments made by BLMIS to Sentry to fund Redemption Payments to Pictet & Cie represented, in fact, amounts deposited with  BLMIS by the Funds and other investors.

79.     Upon information and belief, Pictet & Cie may have paid to or credited some or all of the redemptions payments received by it to accounts of Beneficial Shareholders.  As alleged above, any payments received by Beneficial Shareholders upon the redemption of shares issued to Pictet & Cie consisted of amounts deposited with BLMIS by the Funds and other investors and were not the proceeds of the sale of assets held by BLMIS for the account of Sentry.

80.     Additionally, Beneficial Shareholders were not entitled to receive any portion of the Redemption Payments received by Pictet & Cie upon the redemption of Shares issued to it in its capacity as trustee, agent, representative, or nominee for Beneficial Shareholders because, as was unknown to the Funds, the amounts transferred by the Funds with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the Redemption Payments received by Pictet & Cie for its redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

81.    The Beneficial Shareholders did not provide valuable consideration to the Funds in exchange for the Redemption Payments received by them.

82.    Upon information and belief, some or all of the Beneficial Shareholders received and retained Redemption Payments in excess of amounts paid by them for the purchase of Shares.

83.    The Redemption Payments, while benefiting any Beneficial Shareholder receiving any portion thereof, were made to the detriment of the Funds, their creditors and the current holders of their Shares.

84.    It would thus offend principles of equity and good conscience to permit any Beneficial Shareholder to retain the Redemption Payments.

85.    By reason of the foregoing, the Funds are entitled to recover from any Beneficial Shareholders a sum equal to the portion of any Redemption Payments received by them in respect of their interests in Shares of the Funds held for them through Pictet & Cie.

### SEVENTH CLAIM
*(Constructive Trust-Against all Defendants)*

86.    The Funds repeat and allege again the allegations contained in paragraphs 1 through 85 above as if set forth herein.

87.    As described above, upon receipt of a redemption request, the Funds made each redemption payment to Pictet & Cie based on a miscalculated and inflated Net Asset Value, which caused Redemption Payments to be in excess of the actual Net Asset Value of redeemed Shares.

88.    As alleged above, the Redemption Payments represented deposits with BLMIS made by the Funds and other investors and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

89.    Upon information and belief, Pictet & Cie may have paid some or all of the Redemptions Payments it received to Beneficial Shareholders.

90.    By reason of their receipt of some or all of the Redemption Payments, Defendants have been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

91.    Furthermore, Defendants were not entitled to receive the Redemption Payments because the amounts transferred by the Funds with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received by Pictet & Cie for its redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

92.    It would offend principles of equity and good conscience to permit Defendants to retain the Redemption Payments.

93.    By reason of the foregoing, a constructive trust should be imposed on the Redemption Payments that were received by Defendants for the benefit of the Funds, their creditors and the current holders of Shares in the Funds.

## PRAYER FOR RELIEF

WHEREFORE, Sentry and Sigma, by and through the Foreign Representatives requests the following relief:

A.    On the First, Third and Fifth Claims, judgment for compensatory damages in favor of the Funds against Pictet & Cie in an amount representing the Redemption Payments made to Pictet & Cie, plus interest;

B.       On the Second, Fourth and Sixth Claims, judgment for compensatory damages in favor of the Funds against Beneficial Shareholders in an amount representing the amounts of Redemption Payments received by Beneficial Shareholders, plus interest;

C.       On the Seventh Claim, imposing a constructive trust on Redemption Payments;

D.       Awarding the Funds the costs and disbursements of the action, including reasonable attorneys' fees and accountants' and experts' fees, costs and expenses; and

E.       Granting the Funds such other and further relief as the Court deems just and proper.

Dated: New York, New York
          October 1, 2010

                                        BROWN RUDNICK LLP

                                        By:_____/s/ Kerry Quinn_____
                                             David J. Molton
                                             Daniel J. Saval
                                             May Orenstein
                                             Kerry L. Quinn

                                        Seven Times Square
                                        New York, New York 10036
                                        Telephone: 212.209.4822
                                        Facsimile: 212.209.4801

                                        *Attorneys for the Foreign Representatives*