**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) Chapter 15 Case |
| Fairfield Sentry Limited, et al., | ) |
| | ) Case No. 10-13164 (SMB) |
|     Debtors in Foreign Proceedings. | ) |
| | ) Jointly Administered |
| Fairfield Sentry Limited (In | ) |
| Liquidation), et al., acting by | ) |
| and through the Foreign | ) |
| Representatives thereof, | ) Adv. Pro. No. 10-03496 (SMB) |
|              Plaintiffs, | ) |
| | ) Administratively Consolidated |
|     -against- | ) |
| | ) |
| Theodoor GGC Amsterdam, et al., | ) |
|            Defendants. | ) |

**CONSOLIDATED REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS**

## TABLE OF CONTENTS

                                                                              Page

TABLE OF AUTHORITIES ................................................................... iii

PRELIMINARY STATEMENT ............................................................ 1

ARGUMENT .................................................................................... 3

I.    Sections 561(d) and 546(e) Bar All Claims Against All Defendants ......... 3

      A.    All Claims Are Barred Because All of the Funds Are Financial
            Institutions ..................................................................... 3

      B.    Claims for Sentry and Sigma Redemption Payments Are Also
            Barred Because Sentry and Sigma Are Financial Participants ......... 5

      C.    Claims for Redemption Payments by Sigma and Lambda Are
            Also Barred Because They Were "for the Benefit of" a
            Covered Entity ................................................................. 7

      D.    Claims for Redemption Payments "To" Covered Entity Citi
            London Are Barred ............................................................ 8

II.   The Liquidators Cannot Escape the Safe Harbor Through a Novel
      "Intentional Fraudulent Transfer" Theory that Is Unpleaded,
      Unsupported, and Barred by Law ............................................... 8

      A.    The Sole Exception to the Safe Harbor Is for Claims "Under
            Section 548(a)(1)(A)" That the Liquidators Cannot Assert in
            Chapter 15 ....................................................................... 8

      B.    The Liquidators Cannot Revive Safe-Harbored Foreign
            Common Law Claims Through Preemption or Otherwise ............. 10

      C.    The Liquidators' Allegations Fail to Support Any Theory of
            "Intentionally Fraudulent Transfer" Claims ............................ 13

III.  All Claims Against Swiss Defendants Are Barred for Insufficient
      Service of Process ................................................................... 16

      A.    Rule 4(f)(3) Does Not Authorize the Liquidators' Request that
            the Court Retroactively Approve Alternative Service on Swiss
            Defendants' U.S. Counsel .................................................... 16

      B.    The Liquidators Have Failed to Justify Alternative Service,
            Even if it Was Available ...................................................... 18

C.   The Liquidators' Alternative Request for Additional Time
Should Be Denied ............................................................................. 20

CONCLUSION .................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Rules and Statutes

| | |
|---|---|
| 11 U.S.C. § 101(11) | 3 |
| 11 U.S.C. § 101(15) | 5 |
| 11 U.S.C. § 101(22)(A) | 3 |
| 11 U.S.C. § 101(22A) | 5, 6 |
| 11 U.S.C. § 101(32)(A) | 5 |
| 11 U.S.C. § 101(46) | 6 |
| 11 U.S.C. § 101(53C) | 6 |
| 11 U.S.C. § 541(a) | 9 |
| 11 U.S.C. § 544 | 11 |
| 11 U.S.C. § 546(e) | *passim* |
| 11 U.S.C. § 546(g) | 6 |
| 11 U.S.C. § 548(a)(1)(A) | *passim* |
| 11 U.S.C. § 561(d) | *passim* |
| 11 U.S.C. § 1501 | 10 |
| 11 U.S.C. § 1521(a)(7) | 9 |
| 11 U.S.C. § 1528 | 9 |
| 15 U.S.C. § 78c(a)(16) | 11 |
| 15 U.S.C. § 78bb(f)(1) | 11 |
| 28 U.S.C. § 1334(e) | 9 |
| Fed. R. Civ. P. 9(b) | 2 |

Fed. R. Civ. P. 4(f)(3) .......................................................................................... *passim*

**Cases**

*AP Servs., LLP v. Silva,*
483 B.R. 63 (S.D.N.Y. 2012) .............................................................................. 12

*Baliga v. Link Motion Inc.,*
385 F. Supp. 3d 212 (S.D.N.Y. 2019) ................................................................ 19-20

*Blazevska v. Raytheon Aircraft Co.,*
522 F.3d 948 (9th Cir. 2008) .............................................................................. 11

*Broman v. Stern,*
172 A.D.2d 475 (2d Dep't 1991) ........................................................................ 18

*Brown v. Comm'n On Human Rights & Opps.,*
2008 WL 687358 (D. Conn. Mar. 10, 2008) ...................................................... 19

*Camotex, S.R.L. v. Hunt,*
741 F. Supp. 1086 (S.D.N.Y. 1990) ................................................................... 19

*Cassano v. Altshuler,*
186 F. Supp. 3d 318 (S.D.N.Y. 2016) ................................................................ 20

*Cephalon v. Sun Pharms.,*
2011 WL 6130416 (D.N.J. Dec. 7, 2011) ........................................................... 17

*Chavez v. Carranza,*
559 F.3d 486 (6th Cir. 2009) .............................................................................. 12

*Cortec Indus., Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991) ................................................................................. 4

*Drew Techs., Inc. v. Robert Bosch, L.L.C.,*
2013 WL 6797175 (E.D. Mich. Oct. 2, 2013) .................................................... 17

*Essco Faith S.A. v. Tradeline (L.L.C.),*
2008 WL 11515348 (S.D.N.Y. Jan. 14, 2008), *amended by* 2008 WL 11515349
(S.D.N.Y. Apr. 11, 2008) ..................................................................................... 20

*Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.,*
2005 WL 1123755 (S.D.N.Y. May 11, 2005) ..................................................... 17

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
2018 WL 3756343 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Jurisdiction Opinion") ................ 18-19

*Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*,
596 B.R. 275 (Bankr. S.D.N.Y. 2018) ("Merits Opinion") ................................ *passim*

*FDIC v. Hirsch (In re Colonial Realty Co.)*,
980 F.2d 125 (2d Cir. 1992)................................................................... 9

*Freedom Watch, Inc. v. Org. of Petrol. Exp. Countries*,
107 F. Supp. 3d 134 (D.D.C. 2015) ........................................................ 17

*Freeplay Music, LLC v. Rigol Tech. USA, Inc.*,
2020 WL 564232 (S.D.N.Y. Feb. 4, 2020)................................................. 19

*Halvorssen v. Simpson*,
328 F.R.D. 30 (E.D.N.Y. 2018)............................................................. 20

*Holliday v. K Rd. Power Mgmt., LLC (In re Boston Generating LLC)*,
2020 WL 3286207 (Bankr. S.D.N.Y. June 18, 2020)................................. 4, 10

*In re Adler, Coleman Clearing Corp.*,
263 B.R. 406 (S.D.N.Y. 2001)............................................................. 15

*In re Auto. Parts Antitrust Litig.*,
2017 WL 10808851 (E.D. Mich. Nov. 2, 2017)......................................... 17

*In re Barnet*,
737 F.3d 238 (2d Cir. 2013)................................................................. 5

*In re Bozel S.A.*,
2017 WL 3175606 (S.D.N.Y. July 25, 2017)............................................ 20

*In re FAH Liquidating Corp.*,
572 B.R. 117 (Bankr. D. Del. 2017) ...................................................... 11

*In re GLG*,
287 F.R.D. 262 (S.D.N.Y. 2012) .......................................................... 19

*In re Graña y Montero S.A.A. Sec. Litig.*,
2019 WL 259778 (E.D.N.Y. Jan. 9, 2019) .............................................. 17

*In re Hellas Telecomms. (Luxembourg) II SCA*,
526 B.R. 499 (Bankr. S.D.N.Y. 2015).................................................. 12-13

*In re Lehman Bros. Holdings Inc.*,
469 B.R. 415 (Bankr. S.D.N.Y. 2012)................................................................................. 12-13

*In re Picard*,
917 F.3d 85 (2d Cir. 2019)................................................................................................. 12

*In re Tribune Co. Fraudulent Conveyance Litig.*,
2017 WL 82391 (S.D.N.Y. Jan. 6, 2017) ........................................................................... 14

*In re Tribune Co. Fraudulent Conveyance Litig.*,
2019 WL 1771786 (S.D.N.Y. Apr. 23, 2019)...................................................................... 5

*In re Tribune Co. Fraudulent Conveyance Litig.*,
946 F.3d 66 (2d Cir. 2019)................................................................................................. 3-4, 7

*In re Tribune Co. Fraudulent Conveyance Litig.*,
2018 WL 6329139 (S.D.N.Y. Nov. 30, 2018)...................................................................... 13

*Johnson v. Holder*,
564 F.3d 95 (2d Cir. 2009).................................................................................................. 1

*Klein v. United States*,
278 F.R.D. 94 (W.D.N.Y. 2011).......................................................................................... 16

*Krause v. Titleserv, Inc.*,
402 F.3d 119 (2d Cir. 2005)............................................................................................... 6

*LaSala v. Bordier et Cie*,
519 F.3d 121 (3d Cir. 2008)............................................................................................... 11

*Luria v. Hicks (In re Taylor, Bean & Whitaker Mortg. Corp.)*,
2017 WL 4736682 (Bankr. M.D. Fla. Mar. 14, 2017)......................................................... 6

*Miller v. CSFB (In re Refco, Inc. Sec. Litig.)*,
2009 WL 7242548 (S.D.N.Y. Nov. 13, 2009), *report and recommendation
adopted*, 2010 WL 5129072 (S.D.N.Y. Jan. 12, 2010)....................................................... 9-10

*Ninety-Five Madison Co. v. Vitra Int'l AG*,
2020 WL 1503640 (S.D.N.Y. Mar. 30, 2020) .................................................................... 18

*NYKCool A.B. v. Pac. Int'l Servs., Inc.*,
2015 WL 998455 (S.D.N.Y. Mar. 5, 2015) ........................................................................ 17

*Official Comm. of Unsecured Creditors of Nat'l Forge Co. v. Clark
(In re Nat'l Forge Co.)*,
344 B.R. 340 (W.D. Pa. 2006) ................................................................................ 10

*Picard v. ABN Amro Bank (Ir.) Ltd. (In re BLMIS)*,
505 B.R. 135 (S.D.N.Y. 2013) ................................................................................ 6, 8

*Picard v. Legacy Capital Ltd. (In re BLMIS)*,
548 B.R. 13 (Bankr. S.D.N.Y. 2016) ..................................................................... 10

*Picard v. Merkin (In re BLMIS)*,
515 B.R. 117 (Bankr. S.D.N.Y. 2014) ................................................................... 10

*RSM Prod. Corp. v. Fridman*,
2007 WL 2295907 (S.D.N.Y. Aug. 10, 2007) ....................................................... 19

*SEC v. Cluff*,
2018 WL 896027 (S.D.N.Y. Jan. 10, 2018) .......................................................... 19

*SEC v. Jammin Java Corp.*,
2016 WL 6650849 (C.D. Cal. Apr. 21, 2016) ....................................................... 16

*Tillman v. N.Y. State Dep't of Mental Health*,
776 F. Supp. 841 (S.D.N.Y. 1991), *aff'd*, 963 F.2d 1521 (2d Cir. 1992) ........... 19

*U.S. Bank Nat'l Assoc. v. Verizon Commc'ns Inc.*,
892 F. Supp. 2d 805 (N.D. Tex. 2012) ................................................................. 10, 11

*Warsco v. Preferred Tech. Grp.*,
258 F.3d 557 (7th Cir. 2001) ................................................................................ 6-7

*Wash. St. Inv. Bd. v. Odebrecht, S.A.*,
2018 WL 6253877 (S.D.N.Y. Sept. 21, 2018) ...................................................... 17

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) .................................................................................. 5, 8, 15

*Zhang v. Baidu.com Inc.*,
293 F.R.D. 508 (S.D.N.Y. 2013) ........................................................................... 19

**<u>Other Authorities</u>**

*Fairfield Sentry Ltd. (in Liquidation) v. Migani*
[2014] UKPC 9 ................................................................................................................    14-15

Restatement (Third) Of Foreign Relations § 403 ..............................................................    12

Defendants,[1] as listed on Appendix A hereto, by their attorneys listed on Appendix B, respectfully submit this consolidated reply memorandum of law in response to the Liquidators' Memorandum of Law in Opposition to Defendants' Renewed Motion to Dismiss ("Opposition").

## PRELIMINARY STATEMENT

The Liquidators argue that their Actions should survive by recasting their claims as ones they never brought and cannot bring, and by asking to be excused from service they never tried to properly effect, despite being put on notice of the fatal legal defect in their service over eight years ago by Defendants and nearly two years ago by this Court. Their attempts to rewrite a history of contrary allegations and of contradictory theories of this case go nowhere.

As to the safe harbor, this Court has already held, based on its review of the Liquidators' actual pleadings and numerous submissions,[2] that Sections 546(e) and 561(d) of the Bankruptcy Code bar the Liquidators' statutory avoidance claims if they seek to unwind Covered Transactions. Merits Opinion, 596 B.R. 275, 314 (Bankr. S.D.N.Y. 2018). That is the law of this case. *See Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (requiring change in law, new evidence, or clear error to "depart from" law of the case). In so holding, the Court left open only two questions: first, whether the Funds or Defendants were Covered Entities, and second, whether the Liquidators' "knowing receipt" constructive trust claims are also barred. Yet much

---

[1]    Capitalized terms not defined herein have the meaning ascribed in the Consolidated Memorandum of Law in Support of Defendants' Renewed Motion to Dismiss (Dkt. 2903) ("Defendants' Brief"). Unless otherwise noted, all citations to "(Dkt. __)" refer to the docket entry in the consolidated adversary proceeding for the Actions: *Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam*, Adv. Pro. No. 10-03496 (SMB) (Bankr. S.D.N.Y.).

       Consistent with Defendants' Brief, Defendants cite to the Amended Complaint in *Fairfield Sentry Ltd. v. HSBC Private Bank Suisse SA*, Adv. Pro. No. 10-03633 (SMB) (Bankr. S.D.N.Y. Jan. 9, 2020) (Dkt. 86) ("TAC"), which is materially identical to the other Amended Complaints as to the issues discussed herein, unless otherwise noted. The Liquidators use a different representative Amended Complaint. *See* Opp'n at 4 n.1, 7-8.

[2]    This Court noted that the Liquidators do not allege intentional fraudulent transfers based on the pleadings, oral argument, and their over one dozen letters leading up to that decision. *See* Merits Op., 596 B.R. at 310 n.50.

of the Opposition re-argues questions the Court already resolved, leaving little doubt that what remains to be decided should be resolved in Defendants' favor. As to the appropriate questions:

*First*, the redemption payments were made "by," "to," or "for the benefit of" a Covered Entity: (i) the Funds were financial institutions so redemptions paid "by" them are protected; (ii) Sentry and Sigma were financial participants so redemptions paid "by" them are protected; (iii) Sigma and Lambda made all redemptions "for the benefit of" Sentry so those redemptions are protected; and (iv) Defendant Citibank NA London ("Citi London") is a Covered Entity by stipulation of the parties so all payments sent "to" Citi London are protected.[3]

*Second*, Sections 561(d) and 546(e) bar all claims. By its plain text, Section 546(e) permits only claims "under section 548(a)(1)(A)"—which the Liquidators have not brought and could not bring in this Chapter 15 case. The safe harbor does not permit claims under foreign law, no matter how characterized. Even were it otherwise, contrary to the Liquidators' assertion, this Court's Merits Opinion did not find the requisite intent to defraud and the Amended Complaints plainly do not allege the Funds' intent to defraud creditors. *See* Fed. R. Civ. P. 9(b). The knowing receipt claims also should be dismissed because they seek the same relief as the barred avoidance claims, *i.e.*, reversal of these transactions, but they are not brought "under" Section 548(a)(1)(A) and are again not based on an intentionally fraudulent transfer.

As to service, the Liquidators concede that mail service on the Swiss Defendants was improper but now ask the Court to ratify it by permitting *nunc pro tunc* alternative service on U.S. counsel or by allowing them a re-do. The Court has no power to authorize service on U.S. counsel here and, even if it did, the Liquidators have failed to show the diligence required for the

---

[3]    The Court preserved all arguments that individual Defendants are also entitled to protection on the basis that transfers were "to" or "for the benefit of" additional Covered Entities. (Dkt. 3028).

Court to permit them to now attempt to cure their long-standing service defect, including because mistake of law is not a valid excuse.

Accordingly, the Court should dismiss all of the Liquidators' claims.

## ARGUMENT

## I.    Sections 561(d) and 546(e) Bar All Claims Against All Defendants

### A.  All Claims Are Barred Because All of the Funds Are Financial Institutions

All agree that, under *Tribune* and the plain text of Section 101(22)(A) of the Bankruptcy Code, a "financial institution" includes customers of a bank when the bank is "'acting as agent or custodian for a customer . . . in connection with a securities contract.'" *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66, 78 (2d Cir. 2019) (citation omitted) (cited in Defs.' Br. at 12-15). The Liquidators also do not contest that each Fund redemption payment they seek to avoid was made by the Funds in connection with a securities contract or that the Funds were customers of Citco Bank, a financial institution. *See* Defs.' Br. at 13-15. Further, the Liquidators do not dispute that Citco Bank was the Funds' agent. *See* Opp'n at 20-21.[4] Instead, the Liquidators seek to avoid dismissal by arguing that the question of Citco Bank's status as an agent "should be submitted to the jury." *Id.* (citation omitted). This ignores the Liquidators' own allegations and the documents on which they rely.

The Amended Complaints uniformly allege that (i) the Funds engaged Citco Bank to act on their behalf and paid Citco Bank for its services, TAC ¶¶ 51, 68-70, (ii) the Funds remained in control of the services Citco Bank provided, *see id.* ¶¶ 5, 9, and (iii) Citco Bank accepted fees and assumed obligations to the Funds and their shareholders, *id.* ¶¶ 65, 68-70. No more is

---

[4]      The Liquidators argue that Citco Bank, the Funds' custodian, was not a "custodian" as defined in Section 101(11). *See* Opp'n at 20. Their argument is a straw man. Defendants argued that Citco Bank was the Funds' agent, Defs.' Br. at 14; it is unnecessary to grapple with whether it was also a "custodian," as defined by the Code.

required to establish agency as a matter of law. *See Tribune*, 946 F.3d at 79-80; *see also*

*Holliday v. K Rd. Power Mgmt., LLC (In re Boston Generating LLC)*, 2020 WL 3286207, at *33-34 (Bankr. S.D.N.Y. June 18, 2020) (finding agency for purposes of safe harbor as a matter of law on a motion to dismiss).

Further showing agency, the Funds and Citco Bank entered into custody agreements ("Custody Agreements") that (i) obligated Citco Bank to accept deposits, deliver securities or assets, and provide payment services on behalf of the Funds, (ii) provided that Citco Bank was subject to the control and "[i]nstructions of" the Funds with respect to such services, and (iii) manifested the Funds' and Citco Bank's agreement to such services. *See* Decl. of Christine M. Jordan, dated June 19, 2020, Ex. A (Sentry Custody Agreement §§ 2, 5.3, 6); *id.* Ex. B (Sigma Custody Agreement §§ 2, 6.3, 7).[5]

The Liquidators try to recast this relationship as agency "in name only," Opp'n at 21, but the Liquidators have repeatedly acknowledged the services Citco Bank provided to the Funds, including by paying all redemptions at issue,[6] *see, e.g.*, Mar. 27, 2020 Hr'g Tr. at 15:13-15 (MR. ELSBERG: "Your question earlier about the flow of payments through Citco -- we agreed that it did go through Citco . . . ."); Liquidators' Reply at 67 (Dkt. 1336) (cited in Defs.' Br. at 5 & n.21) (acknowledging Citco Bank paid all redemptions).

Similarly, the Liquidators fail to distinguish Citco Bank from Citco Fund Services—an entity that the Liquidators accept was the Funds' agent for purposes of their imputation

---

[5]     This Court can consider the Custody Agreements because they are "integral to" the Amended Complaints. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991). The Liquidators had possession of and relied on the Custody Agreements in bringing suit, *see id.*, because the Funds are parties to the Custody Agreements and the Amended Complaints allege that the Funds engaged Citco Bank as custodian, TAC ¶ 51.

[6]     The Liquidators have also previously argued that hundreds of Defendants that separately retained Citco Bank as custodian for their Fund investments should have attributed to them the "knowledge obtained by" Citco Bank and other Citco entities "in the course of the Citco's custodian and administration services for the Funds," emphasizing that Citco Bank was "*the Funds' custodian*." Liquidators' Reply at 54 & n.66 (emphasis in original).

argument.  *See* Opp'n at 12, 20 n.14.  The Amended Complaints allege that "[i]rrespective of which 'Citco' entity the Funds[] engaged, at all relevant times the Funds[] were provided services from and on behalf of 'Citco' as a whole from at least eight separate entities," including Citco Fund Services and Citco Bank.  TAC ¶¶ 47, 75.  The Liquidators cannot amend their pleadings through briefing.  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

In short, there is no legitimate argument regarding whether Citco Bank, undisputedly a financial institution, was the Funds' agent.  Given that, and the Liquidators' telling failure to raise any other relevant arguments, all transactions are Covered Transactions.

### B.  Claims for Sentry and Sigma Redemption Payments Are Also Barred Because Sentry and Sigma Are Financial Participants

The Liquidators do not dispute that Sentry and Sigma satisfy the quantitative thresholds to also qualify as financial participants.  Instead, the Liquidators argue only that Sentry and Sigma could not be financial participants because they are debtors.  The Liquidators try to defend related *dicta* from *In re Tribune Co. Fraudulent Conveyance Litig.*, 2019 WL 1771786, at *9 (S.D.N.Y. Apr. 23, 2019), but they are wrong for five main reasons, *see also* Defs.' Br. at 21-22.

*First*, the Code does not exclude debtors from the definition of "financial participants." Financial participants include (1) any "entity" (2) that entered into "securities contract[s]" or other transactions (3) "with the debtor or any other entity" (4) that satisfied the quantitative thresholds.  11 U.S.C. § 101(22A).  There is no exclusion for debtors that qualify, *id.* §§ 101(15), 101(22A), and, indeed, the Code elsewhere uses "entity" to *include* debtors, *see, e.g.*, *id.* § 101(32)(A).  That alone should resolve the question.  *See In re Barnet*, 737 F.3d 238, 246-50 (2d Cir. 2013) (noting "straightforward nature" of interpretative inquiry when "plain meaning" is unambiguous).  The Liquidators misread the statute when they argue that part of the definition would be superfluous if debtors could be financial participants because debtors cannot

5

have contracts with themselves. *See* Opp'n at 21. On its face, the definition covers agreements

with "the debtor" or "any other entity." 11 U.S.C. § 101(22A). If the entity in question *is* the

debtor, then of course the agreement in question must be with some "other entity"—and nothing

about that renders the definition unworkable. *See Krause v. Titleserv, Inc.*, 402 F.3d 119, 127-28

(2d Cir. 2005) (reasoning that clarifying language should prevail over implausible alternatives).

*Second*, the Liquidators point to the definitions of "swap participant" and "repo

participant," to argue that, because *those* provisions require that an "entity" must have particular

agreements with the "debtor," *no* "entity" can be a "debtor." 11 U.S.C §§ 101(46), (53C). Not

so. Even crediting the Liquidators' argument, Opp'n at 22, all it would show is that a debtor

cannot be a swap participant or repo participant—because it cannot have an agreement with

itself—and not that a debtor is excluded from the financial participant definition, which *expressly*

*encompasses a broader spectrum of agreements*, *e.g.,* those with "any other entity," *see Picard v.*

*ABN Amro Bank (Ir.) Ltd. (In re BLMIS)*, 505 B.R. 135, 145 (S.D.N.Y. 2013) (stating that adding

financial participants to Section 546(g) broadened previous swap participant-specific protection).

*Third*, the Liquidators incorrectly assert that Defendants cited no decision where a debtor

was found to be a financial participant, Opp'n at 23; Defs.' Br. at 22 (citing *Luria v. Hicks (In re*

*Taylor, Bean & Whitaker Mortg. Corp.)*, 2017 WL 4736682 (Bankr. M.D. Fla. Mar. 14, 2017)),

and then dismiss *Hicks* as "wrongly decided," purportedly lacking "analysis or reasoning."

Opp'n at 23. In fact, *Hicks* relied on sound principles of statutory construction to reject the

Liquidators' exact position on the grounds that a court cannot "rewrite the statute that Congress

has enacted" by adding exclusionary language "that does not exist." 2017 WL 4736682, at *5-6.

*Fourth*, the Liquidators find no support in *Warsco v. Preferred Tech. Grp.*, 258 F.3d 557

(7th Cir. 2001) (cited in Opp'n at 23), which involves neither the safe harbor nor Covered

6

Transactions.  All *Warsco* shows is that indirect transfers are avoidable or safe-harbored only if made by or on behalf of a debtor, *see id.* at 564, which is Defendants' point: that the safe harbor covers transfers "by" financial participant debtors, Defs.' Br. at 22.  The Liquidators offer no reason to believe that Congress sought to protect only the narrow class of transfers "by" non-debtor financial participants.  *See also Tribune*, 946 F.3d at 92 (noting broad protective goals).

*Finally,* the Liquidators misread the legislative history.  When it enacted protections for financial participants, Congress was concerned with the cascading effect that the insolvency of large offshore hedge funds like the Funds would have on counterparties like Defendants.  *See* Merits Op., 596 B.R. at 312-14.  Financial participant protection arose *directly* out of the near-failure of foreign hedge fund LTCM.  *See* Defs.' Br. at 15-16 (reviewing legislative history).  But for its bailout, LTCM would have been a debtor and its liquidation would have produced massive systemic risk.  *See id.*  The Funds' liquidation arises in the same context.  The Liquidators stress that Congress extended financial participant protection "to limit the potential impact of insolvencies upon *other major market participants*."  Opp'n at 22 (emphasis in original) (quoting H.R. Rep. 109-31(I), 130, 2005 U.S.C.C.A.N. 88, 19).  By suing countless major market participants for billions of dollars in redemptions, the Liquidators have done exactly what Congress wanted to protect against.  *See* App. E to Defs.' Br. (listing nearly 200 banks, trust companies, and other financial institution Defendants).  At bottom, the text is clear that a debtor can be a financial participant and nothing cited in the legislative history suggests a clear intent to deviate from a plain reading of the statute.

### C.  Claims for Redemption Payments by Sigma and Lambda Are Also Barred Because They Were "for the Benefit of" a Covered Entity

The Liquidators' only response to Defendants' argument that redemption payments from Sigma and Lambda are additionally safe-harbored because they were "for the benefit of" Sentry,

a Covered Entity for the reasons explained, *supra* Sections I.A-I.B, is to incorrectly claim that it

is unsupported by authority, *see* Opp'n at 19 n.13.  Defendants' Brief relies on *ABN Amro*, 505

B.R. at 149-50, which dismissed claims for transfers benefitting a Covered Entity when there

was "some intent-to-benefit" that entity.  Defs.' Br. at 23-24.  Sigma and Lambda were created

and operated to benefit Sentry by expanding Sentry's investor base to foreign investors.  *See id.*

Redemption payments, without which no investor would have subscribed, were intended to and

did benefit Sentry by putting more assets at its disposal.  *See id.*

### D.  Claims for Redemption Payments "To" Covered Entity Citi London Are Barred

The Court has preserved and held in abeyance all arguments that transfers to individual

Defendants are also barred because they were "to" or "for the benefit of" a Covered Entity

recipient, with the exception of Citi London.  (Dkt. 3028).  The Liquidators stipulated that Citi

London is a Covered Entity.  (Dkt. 3028).  The Liquidators do not contest that transfers to, and

all downstream transfers from, Citi London are protected.  Those claims should be dismissed.

## II.   The Liquidators Cannot Escape the Safe Harbor Through a Novel "Intentional Fraudulent Transfer" Theory that Is Unpleaded, Unsupported, and Barred by Law

The thrust of the Liquidators' Opposition is that the safe harbor should not bar their

claims because they are effectively hypothetical intentional fraudulent transfer claims, which

they concededly did not assert, despite amending or seeking to amend the Amended Complaints

as many as seven times in some cases, including after the Merits Opinion.  The Liquidators are

bound by their allegations and cannot amend through briefing.  *See Wright*, 152 F.3d at 178.

### A.  The Sole Exception to the Safe Harbor Is for Claims "Under Section 548(a)(1)(A)" That the Liquidators Cannot Assert in Chapter 15

Section 546(e), as made applicable by Section 561(d), excludes from the safe harbor *only*

claims "under section 548(a)(1)(A)."  11 U.S.C. § 546(e).  The Liquidators have not brought

claims under Section 548(a)(1)(A) and, in a Chapter 15 proceeding, they *cannot* bring claims

8

under Section 548(a)(1)(A).  *See* 11 U.S.C. §§ 1521(a)(7), 1528.  As a result, it does not matter

what the Liquidators allege about the nature or circumstances of the transfers—the safe harbor

bars and will always bar recovery of the redemption payments.  While the Liquidators could

have, in theory, invoked Section 548(a)(1)(A) through Chapter 7 or 11 plenary cases, such cases

apply to debtor assets "within the territorial jurisdiction of the United States," *id.* § 1528, and

nearly all transfers here were allegedly made to non-U.S. Defendants,[7] *see* Liquidators' Reply at

67 (noting that Defendants are "predominantly foreign entities" and transfers were

"principally . . . to foreign bank accounts").  Further, all of the alleged redemptions are well

outside the two-year look-back period for claims brought under Section 548(a)(1)(A).

        Seeking to escape the safe harbor, the Liquidators labor against their own allegations,

arguing that if the underlying *transfers* are "intentionally fraudulent," then they fall outside the

safe harbor regardless of what *claims* are asserted to avoid them.  Opp'n at 9-10.  But that is

contrary to the plain language of Section 546(e); it does not exclude "intentionally fraudulent

transfers," rather, it excludes a specific type of claim by specifying that a trustee "may not avoid

a transfer . . . *except under section 548(a)(1)(A)* of this title."  11 U.S.C. § 546(e) (emphasis

added).  Courts routinely interpret Section 546(e) to mean what it says—dismissing intentional

fraudulent transfer claims brought under *state law* because they are not asserted "under section

548(a)(1)(A) of this title."  *See, e.g.*, *Miller v. CSFB (In re Refco, Inc. Sec. Litig.)*, 2009 WL

7242548, at *9 n.7 (S.D.N.Y. Nov. 13, 2009), ("[T]he claims for constructive fraud and

fraudulent conveyance under state law are properly dismissed with prejudice because of the safe

harbor . . . ."), *report and recommendation adopted*, 2010 WL 5129072 (S.D.N.Y. Jan. 12,

---

[7]        Section 1528 permits a U.S. court when necessary to exercise jurisdiction over assets of the debtor that are
within its jurisdiction under Section 541(a) and 28 U.S.C. § 1334(e).  The Liquidators could not bring these claims
under those rules, either, including because property of the estate includes property transferred prepetition only once
recovered.  11 U.S.C. § 541(a)(3); *FDIC v. Hirsch (In re Colonial Realty Co.)*, 980 F.2d 125, 131 (2d Cir. 1992).

2010); *U.S. Bank Nat'l Assoc. v. Verizon Commc'ns Inc.*, 892 F. Supp. 2d 805, 816-17 (N.D.

Tex. 2012) ("If Congress wished to exclude state law 'actual intent' fraudulent transfer claims

from the operation of Section 546(e), it could have expressly done so."); *Official Comm. of*

*Unsecured Creditors of Nat'l Forge Co. v. Clark (In re Nat'l Forge Co.)*, 344 B.R. 340, 370

(W.D. Pa. 2006) (same); *Holliday*, 2020 WL 3286207, at *26 ("[T]his Court is bound by the

plain language of section 546(e), which provides an exception only for intentional fraudulent

transfer claims brought under the Bankruptcy Code and no more.").  The plain words of Section

546(e) therefore preclude the Liquidators' foreign statutory and common law claims that

likewise are not asserted "under" Section 548(a)(1)(A).

    Indeed, the Liquidators' argument flies in the face of how courts in this District have

applied Section 546(e) in BLMIS-related litigation for nearly a decade.  *See, e.g.*, *Picard v.*

*Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (distinguishing

between claims brought under Section 548(a)(1)(A) and other claims brought with respect to the

same intentional fraudulent transfers when applying Section 546(e)); *Picard v. Merkin (In re*

*BLMIS)*, 515 B.R. 117, 141 (Bankr. S.D.N.Y. 2014) (same).

### B.  The Liquidators Cannot Revive Safe-Harbored Foreign Common Law Claims Through Preemption or Otherwise

    The Liquidators' argument that their foreign common law claims are saved by

prescriptive comity or canons of "preemption," Opp'n at 14-19, misapprehends how

Section 546(e) works with Section 561(d).  Chapter 15 affords the Liquidators certain powers

*under U.S. law* to invoke the assistance of *U.S. courts* to pursue avoidance and recovery of

transfers under foreign law in support of a foreign main liquidation.  *See* 11 U.S.C. § 1501.

Sections 546(e) and 561(d) *limit* those powers by describing claims that the Liquidators "may

not" bring.  Sections 546(e) and 561(d) do not "displace" foreign law or seek to "preempt" its

10

application.  *See, e.g.*, Opp'n at 2, 9.  Whether such claims could proceed in another action or under another law is irrelevant.  The Code precludes the Liquidators in *this* proceeding from avoiding transfers that are subject to the safe harbor—as the redemption payments plainly are—using any tool other than Section 548(a)(1)(A).[8]  *See Blazevska  v. Raytheon Aircraft Co.*, 522 F.3d 948, 953-54 (9th Cir. 2008) (holding that while statute at issue contained no language displacing otherwise applicable foreign law, it still barred foreign cause of action because statute provided a limit on relief applicable to both foreign and domestic claims).

The Liquidators' error is compounded by their reliance on case law interpreting the Securities Litigation Uniform Standards Act ("SLUSA").  *See* Opp'n at 15-16.  Congress passed SLUSA to end circumvention of the Private Securities Litigation Reform Act ("PSLRA") through collective actions brought under state law.  *See, e.g.*, *LaSala v. Bordier et Cie*, 519 F.3d 121, 128 (3d Cir. 2008) (cited in Opp'n at 15).  In enacting SLUSA, Congress was concerned about the assertion of securities claims under concurrently applicable *state* law to the same facts as federal securities claims.  *See id.*  Congress was *not* concerned with the strained possibility of plaintiffs seeking to circumvent the PSLRA by asserting their securities claims under *foreign* law.  *See id.* at 138-39.  Congress therefore addressed SLUSA to claims "based upon the statutory or common law *of any State.*"  *Id.* (quoting 15 U.S.C. § 78bb(f)(1)) (emphasis added); *see also* 15 U.S.C. § 78c(a)(16) ("'State' means any State of the United States . . . or any other possession of the United States.").  Sections 546(e) and 561(d) use wholly different language in service of entirely different aims.

---

[8]      For that reason, the Liquidators are wrong to dismiss cases such as *Verizon,* 892 F. Supp. 2d 805, in which courts dismissed state law fraudulent conveyance claims under Section 544, because those cases confirm that Congress intended only to permit Section 548(a)(1)(A) claims.  *See* Opp'n at 18-19.  The Liquidators are in any event wrong for the additional reason that foreign law claims could be brought under Section 544 under appropriate circumstances.  *See, e.g.*, *In re FAH Liquidating Corp.*, 572 B.R. 117, 130 (Bankr. D. Del. 2017) (finding German law governed Section 544 claim before dismissing claim because German law did not afford relief).

Nor does prescriptive comity provide a basis to escape the safe harbor because there is no "true conflict" between U.S. and foreign law here. *See In re Picard*, 917 F.3d 85, 102 (2d Cir. 2019). That a claim may be cognizable in a BVI court, but not in this Court sitting in Chapter 15, does not give rise to a true conflict. *See Chavez v. Carranza*, 559 F.3d 486, 495 (6th Cir. 2009) (holding no conflict when U.S. claim proceeded and foreign amnesty law provided immunity in foreign country); *see also* Restatement (Third) Of Foreign Relations § 403 cmt. e (explaining true conflict only exists when impossible to comply with laws of two countries).

Finally, the Liquidators cannot salvage their knowing receipt claims by arguing that those claims do not seek the "same relief" as their statutory avoidance claims. *See* Opp'n at 19 n.11. While the safe harbor will not bar a fiduciary duty claim that seeks *money damages* with respect to a Covered Transaction, it nonetheless bars *any claim* that seeks to "unwind[] settled securities transactions" as an avoidance claim does. *AP Servs., LLP v. Silva*, 483 B.R. 63, 71-72 (S.D.N.Y. 2012) (cited in Defs.' Br. at 29-30). Here, the knowing receipt claims, like the avoidance claims, seek to unwind the redemption payments, which are Covered Transactions. *Compare* TAC, Prayer for Relief ¶ A (seeking imposition of constructive trust in the amount of the redemption payments), *with id.* ¶¶ B-C (seeking judgment in the amount of the redemption payments) (cited in Defs.' Br. at 31). The Liquidators try to escape this inevitability by again asserting that their claims somehow resemble hypothetical intentional fraudulent transfer claims. *See* Opp'n at 17-19 (citing *In re Hellas Telecomms. (Luxembourg) II SCA*, 526 B.R. 499 (Bankr. S.D.N.Y. 2015) and *In re Lehman Bros. Holdings Inc.*, 469 B.R. 415 (Bankr. S.D.N.Y. 2012)). But *Hellas*, 526 B.R. at 512-13, and *Lehman*, 469 B.R. at 449-51, both involved insiders who had knowledge of the debtor's financial circumstances, exploited those circumstances, and exerted control over

debtors to make the challenged transfers.  The Amended Complaints, by contrast, go out of their

way to avoid alleging any fraud by the Funds.  *See infra* Section II.C.

### C.  The Liquidators' Allegations Fail to Support Any Theory of "Intentionally Fraudulent Transfer" Claims

To prove an intentionally fraudulent transfer, a trustee must show that the transferor made

such transfer with actual intent to hinder, delay, or defraud a creditor.  11 U.S.C. § 548(a)(1)(A);

*In re Tribune Co. Fraudulent Conveyance Litig.*, 2018 WL 6329139, at *12, *16 (S.D.N.Y. Nov.

30, 2018).

The Liquidators admit that the Amended Complaints do not allege that the Funds had the

intent to delay, hinder, or defraud a creditor.  Opp'n at 13.  The Amended Complaints

consistently allege that the Funds were mistaken in paying redemptions and were the unknowing

"victims" of Citco Fund Services' allegedly fraudulent conduct.  TAC ¶ 76; *see also infra*

note 10 and accompanying text (collecting allegations of mistake).  Instead, the Liquidators

argue that their pleading failure is somehow excused because the Merits Opinion "changed the

law" by purportedly holding that Citco Fund Services acted in bad faith and that such bad faith

was imputed to the Funds.  Opp'n at 9-10.

The predicate for the Liquidators' argument is plainly untrue.  In rejecting the

Liquidators' principal theory of liability and applying *Migani*, the Merits Opinion addressed why

"the Liquidators' assertion of Citco's bad faith as a reason to recover the inflated redemption

payments is self-defeating."  Merits Op., 596 B.R. at 298.  The Court explained that, on the one

hand, "[i]f the Directors knew the NAVs were inflated based on BLMIS' fraud, either directly or

through the imputation of Citco's knowledge, but nonetheless breached their fiduciary duties,"

then "the Funds cannot rely on their own misconduct to recover the inflated redemption

payments."  *Id.* at 299.  The Court then wrote that "[i]f, on the other hand, Citco's bad faith is *not*

imputed to the Directors or the Funds, the Liquidators are still not entitled to recover the redemption payments" because "the Directors would have been duped by Citco and BLMIS when they authorized the excessive redemption payments," which *Migani* precludes. *Id.* at 300 (emphasis added). Contrary to the Liquidators' suggestion, the Court did not amend their complaints for them.

While the Amended Complaints allege that Citco Fund Services acted in "bad faith" in regard to its concerns regarding BLMIS, they fail to allege that Citco Fund Services had any intent to defraud creditors—a failure made even more apparent by the conspicuous omission of any discussion of how the "badges of fraud" test would apply to their allegations.[9]

Moreover, even assuming Citco Fund Services *did* act with actual intent to hinder, delay, or defraud creditors, that intent would be irrelevant here because only the *Funds'* intent is relevant. In an action for an intentionally fraudulent transfer, the plaintiff must demonstrate that the *transferor* had the intent to defraud creditors. 11 U.S.C. § 548(a)(1)(A). Here, the transferors were the Funds, TAC ¶¶ 5, 9, and the Liquidators have failed to allege any facts that might show the Funds had the requisite intent to defraud. Instead, like their prior pleadings before this Court and in the BVI, the Amended Complaints (which were filed *after* the Merits Opinion that purportedly changed the law) allege that the Funds acted in a *mistaken* fashion. *See, e.g.*, TAC ¶ 5 ("At all relevant times, . . . [t]he amount, per share, paid by the Funds to shareholders . . . was calculated based principally on the assets that the Funds *believed* were being held . . . by BLMIS for Sentry's account.") (emphasis added);[10] *Fairfield Sentry Ltd. (in*

---

[9]    The "badges of fraud" test "is almost universally applied in fraudulent conveyance cases." *In re Tribune Co. Fraudulent Conveyance Litig.*, 2017 WL 82391, at *13 (S.D.N.Y. Jan. 6, 2017).

[10]    The Amended Complaints consistently allege the Funds' mistake. *See, e.g.*, TAC ¶ 7 ("Redemption Payments were *mistakenly* made for amounts far in excess of the Net Asset Value of Shares redeemed . . . .") (emphasis added); *id.* ¶ 10 ("At the time such payments were made, [the Funds] *mistakenly believed* that such payments were in the amount of the Net Asset Value of the Shares tendered at the time of redemption.") (emphasis

*Liquidation) v. Migani* [2014] UKPC 9, ¶ 4 ("These proceedings are brought . . . to recover from

the Defendants the amounts paid out to them on redemption, on the footing that they were paid

out in the *mistaken belief* that the assets were as stated by BLMIS . . . .") (emphasis added).  The

Liquidators are bound by these contrary allegations.  *See Wright*, 152 F.3d at 178.

 In any event, the purported fraudulent intent of the Funds' agent could be imputed to the

Funds only if Liquidators have pleaded that the agent was "in the position to dominate or control

the debtor's disposition of his property."  *In re Adler, Coleman Clearing Corp.*, 263 B.R. 406,

443-45, 449 (S.D.N.Y. 2001).  The Liquidators have never claimed—nor could they—that Citco

Fund Services, a mere administrator, could control redemption payments to Defendants.  Only

the Directors had such control.  *See, e.g.*, Sentry's Articles art. 10(1)(a)-(c) (Dkt. 925-6) (setting

forth required timing and form for redemption payments, subject to changes only as "determined

by the Directors").  This Court has also already held that the Funds' payment of redemptions was

"lawful" and "discharged the Funds' valid obligations."  Merits Op., 596 B.R. at 298.

The lack of any basis for imputation is particularly strong because Funds and Citco Fund

Services were "independent, unaffiliated companies.  Their open legal relationship . . . was

arms-length, and their interests potentially hostile.  [They] shared no continuous institutional

channel through which the transference of fraudulent intent simultaneous with a disposition of

property could be effected."[11] *Adler, Coleman*, at 448-49; *Migani*, [2014] UKPC 9, ¶¶ 14-15

(describing relationship of the Funds and Citco Fund Services).

---

added); *id.* ¶ 40 ("The Funds *believed* that the amounts provided in connection with such withdrawals represented
the proceeds arising from the profitability of or to continue investment in BLMIS.") (emphasis added); *id.* ¶ 41
("[T]he money paid by the Funds . . . to BLMIS . . . was, at all relevant times and *unknown to the Funds*, misused
and misappropriated by Madoff . . . .") (emphasis added); *id.* ¶ 106 ("[T]hese Redemption Payments did not, as [the
Funds] *mistakenly believed*, represent the proceeds arising from the profitability of (or to continue investment in)
BLMIS.") (emphasis added).

[11]    The Liquidators' BVI law expert opined that fraud will not be imputed to a principal who is a victim of its
agent's fraud.  *See* Moss Decl. ¶ 87 & n.31 (Dkt. 1338) (recognizing "fraud exception" to "ordinary rules of

## III.    All Claims Against Swiss Defendants Are Barred for Insufficient Service of Process

The Liquidators do not attempt to defend the validity or effectiveness of their mailings to Switzerland.[12]  Instead, they make two new requests.  First, they ask the Court to "retroactively approve the Liquidators' alternative service . . . on Swiss Defendants' U.S. counsel," claiming that proper service would have been (or at least now, ten years later, would be) somehow burdensome.  Opp'n at 24.  Second, if such "alternative service [is] unavailable," they request a do-over.  *Id.*  The first request is not authorized as a matter of law, and even were it available, the Liquidators have failed to justify "alternative service."  As to the second, the Liquidators improperly ask the Court to excuse them from their decade-long lack of diligence.

### A.    Rule 4(f)(3) Does Not Authorize the Liquidators' Request that the Court Retroactively Approve Alternative Service on Swiss Defendants' U.S. Counsel

The Liquidators' request to approve alternative service on U.S. counsel retroactively fails because Fed. R. Civ. P. 4(f)(3), on which they purport to rely, does not authorize such relief for three independent reasons.  *First*, the Liquidators did not ask for permission before attempting service on U.S. counsel.  Rule 4(f)(3) does not permit self-help; rather, it requires plaintiffs to obtain court approval *before* attempting alternative service.  *Klein v. United States*, 278 F.R.D. 94, 96-97 (W.D.N.Y. 2011) (holding unauthorized alternative service invalid and collecting cases).[13]  Moreover, actual notice by a defendant "cannot by itself validate" defective service, *id.* at 97, even assuming Swiss Defendants had actual notice of the Actions, *see* Opp'n at 24-25.

---

attribution which prevents any attribution in a case where the principal is a victim of the fraud . . . by the agent"); *id.* ¶ 89(c) (opining on the "extraordinarily unjust" result if bad faith or fraud were imputed to principal as victim).

[12]    This Court's Scheduling Orders preserved and held in abeyance all arguments that non-U.S. Defendants other than the Swiss Defendants were improperly served with process.  (Dkts. 2926, 3028).

[13]    The Liquidators erroneously claim that *SEC v. Jammin Java Corp.*, 2016 WL 6650849, at *2 (C.D. Cal. Apr. 21, 2016) is "materially indistinguishable from the facts here," Opp'n at 26, but the *Jammin Java* plaintiff, unlike the Liquidators, sought court approval before attempting alternative service, *see* 2016 WL 6650849, at *1-2.

*Second,* Rule 4(f)(3) only applies where service is effected *outside* the United States, but

Swiss Defendants' U.S. counsel are located inside the United States.  Fed. R. Civ. P. 4(f)(3)

(authorizing service "at a place not within any judicial district of the United States").  The Rule,

by its terms, thus precludes the Liquidators' desired means of service here.  *Freedom Watch, Inc.*

*v. Org. of Petrol. Exp. Countries*, 107 F. Supp. 3d 134, 137-38 (D.D.C. 2015) (rejecting request

to serve foreign entity's U.S. counsel).  Although some courts have approved service on a U.S.

lawyer, such alternative methods are allowed only if not prohibited by an international

agreement, as they are here.  *See Wash. St. Inv. Bd. v. Odebrecht, S.A.*, 2018 WL 6253877, at \*4-

5 (S.D.N.Y. Sept. 21, 2018).  The plain text of Rule 4(f)(3) supports the view that the Liquidators

cannot seek alternative domestic service.  *See, e.g.*, *Freedom Watch*, 107 F. Supp. 3d at 138; *In*

*re Auto. Parts Antitrust Litig.*, 2017 WL 10808851, at \*2 (E.D. Mich. Nov. 2, 2017); *Drew*

*Techs., Inc. v. Robert Bosch, L.L.C.*, 2013 WL 6797175, at \*3 (E.D. Mich. Oct. 2, 2013).

*Third*, service on the Swiss Defendants must exclusively be performed in accordance

with the Hague Convention.  *See, e.g.*, *Cephalon v. Sun Pharms.*, 2011 WL 6130416, at \*5-6

(D.N.J. Dec. 7, 2011) (denying Rule 4(f)(3) motion to serve U.S. counsel when plaintiff failed to

comply with Convention because Rule 4(f)(3) only applies absent applicable treaty or "an

international agreement allows but does not specify [alternative] means'").[14]  The Liquidators'

reliance on case law outside of the Rule 4(f)(3) context, Opp'n at 25 (citing *Volkswagenwerk*

*Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 696 (1988)), is misplaced.  *Schlunk* simply held that

---

[14]     The Liquidators rely on cases involving service under the Inter-American Convention, *see Odebrecht*, 2018
WL 6253877 (cited in Opp'n at 25-26); *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 2015 WL 998455 (S.D.N.Y. Mar. 5,
2015) (cited in Opp'n at 25-26), and service absent any "applicable international agreement," *see, e.g.*, *Exp.-Imp.*
*Bank of U.S. v. Asia Pulp & Paper Co.*, 2005 WL 1123755, at \*2 (S.D.N.Y. May 11, 2005) (cited in Opp'n at 24).
Cases construing other agreements (or lack thereof) do not bear on the issue of service in Switzerland.  In any event,
a number of courts have held that "'[u]nlike the Hague Convention, the Inter-American Convention does not purport
to provide the exclusive method of effecting service between the signatories.'"  *See, e.g.*, *In re Graña y Montero*
*S.A.A. Sec. Litig.*, 2019 WL 259778, at \*4 (E.D.N.Y.  Jan. 9, 2019) (citation omitted*), report and recommendation*
*adopted,* 2019 WL 1046627 (E.D.N.Y. Mar. 5, 2019).

the Hague Convention does not prohibit service on a foreign defendant's domestic agent where

state law pre-authorized such service.  *Id.* at 707.  The Liquidators do not even argue that New

York law authorizes service on Swiss Defendants' U.S. counsel.  It does not.  *See Broman v.*

*Stern*, 172 A.D.2d 475, 476 (2d Dep't 1991) (declining to "automatically consider[]" an attorney

to be the agent of its client for purposes of service, absent proof of such designation).

### B.  The Liquidators Have Failed to Justify Alternative Service, Even if it Was Available

Assuming *arguendo* that Rule 4(f)(3) is available, the Liquidators have failed to make the

required showings that (i) they have "'reasonably attempted to effectuate service'" on Swiss

Defendants and (ii) "'the circumstances are such that the court's intervention is necessary.'"

*Spin Master Ltd. v. 158*, 2020 WL 2766104, at *21 (S.D.N.Y. May 28, 2020) (citation omitted).

The Liquidators concededly have made no effort to properly effect service here.  They

instead attempted service by mail in violation of the Federal Rules and Swiss law, despite

authority dating back to at least 2009 laying plain the prohibition on mail service to Switzerland.

*See* Defs.' Br. at 36 (citing *Picard v. Cohmad (In re BLMIS)*, 418 B.R. 75, 82-83 (Bankr.

S.D.N.Y. 2009)).  The Liquidators seek an excuse from the Subscription Agreements, *see* Opp'n

at 30-31, but they have long been on notice that mail service is illegal and ineffective under

Swiss law, *see* Jeandin Decl. ¶¶ 3-9, 16-17 (Dkt. 2905); Defs. Br. at 36-37 & n.73.  The

Liquidators have never contested this point, and this Court has held those agreements

inapplicable.[15]  Jurisdiction Op., 2018 WL 3756343, at *10-12 (Bankr. S.D.N.Y. Aug. 6, 2018).

Even if the Liquidators misinterpreted Swiss law and the Subscription Agreements, their mistake

---

[15]    The Liquidators' claim that they "had no reason to doubt this service was sufficient," Opp'n at 31, is
implausible, including because the decision they cite in support of this claim—*Ninety-Five Madison Co. v. Vitra*
*Int'l AG*, 2020 WL 1503640 (S.D.N.Y. Mar. 30, 2020)—was issued over a year after this Court held that the
Subscription Agreements were inapplicable.

of law does not excuse their failure to attempt proper service. *See Brown v. Comm'n On Human Rights & Opps.*, 2008 WL 687358, at *5 (D. Conn. Mar. 10, 2008); *Tillman v. N.Y. State Dep't of Mental Health*, 776 F. Supp. 841, 844 (S.D.N.Y. 1991), *aff'd*, 963 F.2d 1521 (2d Cir. 1992). In any event, the Court corrected any misconception about the Subscription Agreements nearly two years ago. The Liquidators have done nothing to attempt proper service since then.

The Liquidators' only explanation for ten years of delay is that they have been "reasonably awaiting" a ruling on alternative service. Opp'n at 35. This lacks merit. Nothing has stopped the Liquidators from moving for alternative service, and they offer no explanation for failing to move after the Jurisdiction Opinion. *See SEC v. Cluff*, 2018 WL 896027, at *4 (S.D.N.Y. Jan. 10, 2018) (denying motion for alternative service based on, *inter alia*, failure to timely move). Moreover, despite the Liquidators' claims, Opp'n 32-36, cost and time do "not excuse [plaintiffs] from attempting such service at all,"[16] *Freeplay Music, LLC v. Rigol Tech. USA, Inc.*, 2020 WL 564232, at *4 (S.D.N.Y. Feb. 4, 2020). Nor does a pending or planned motion to dismiss. *See Camotex, S.R.L. v. Hunt*, 741 F. Supp. 1086, 1093 (S.D.N.Y. 1990).

The Liquidators have further failed to make their required showing that a Rule 4(f)(3) order is "necessary." The Liquidators' decision not to attempt Hague service here stands in contrast to the cases on which they rely where courts found necessity when plaintiffs diligently attempted proper service but were thwarted by uncooperative foreign authorities or defendants.[17]

Accordingly, the Court should not grant alternative service now after years of unjustified delay. *See, e.g.*, *Baliga v. Link Motion Inc.*, 385 F. Supp. 3d 212, 220 (S.D.N.Y. 2019) (action

---

[16]    Even taking the Liquidators' estimate of $270,000 to serve the Swiss Defendants at face value, the costs pale in comparison to the billions of dollars they seek in the Actions. Likewise, even assuming the Liquidators are correct that it takes four months on average to effect service, had they attempted Hague service at any point in the last ten years, they could have completed it many times over.

[17]    *See, e.g.*, *RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at *3 (S.D.N.Y. Aug. 10, 2007); *Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 512 n.1 (S.D.N.Y. 2013); *In re GLG*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012).

pending for six months with no effort to serve Hague defendant); *Halvorssen v. Simpson*, 328 F.R.D. 30, 34 (E.D.N.Y. 2018) (action pending less than a year with no effort at Hague service).

### C.  The Liquidators' Alternative Request for Additional Time Should Be Denied

Because the Liquidators have failed to exercise diligence to effect service that could have been accomplished in a few months at any point in the past decade, their untimely request for yet more time for proper service should be denied.  *See In re Bozel S.A.*, 2017 WL 3175606, at *2-3 (S.D.N.Y. July 25, 2017) (affirming dismissal of action because plaintiffs do "not have unlimited time to serve" foreign defendants and must show diligence in attempting to serve) (cited in Opp'n at 35).  This Court has broad discretion to dismiss an action or defendants when service is insufficient.  *See Essco Faith S.A. v. Tradeline (L.L.C.)*, 2008 WL 11515348, at *2 (S.D.N.Y. Jan. 14, 2008), *amended by* 2008 WL 11515349 (S.D.N.Y. Apr. 11, 2008).

For the reasons set forth in Section III.B, including their improper reliance on a legal error, the Liquidators have failed to show diligence.  *See also Bozel*, 2017 WL 3175606, at *3 (requiring explanation for "gaping periods of inactivity" as part of diligence).  The Liquidators' attempt to distinguish decisions dismissing actions for unexcused service failures, *see* Opp'n at 35-36 & n.24, is unavailing.  The Liquidators are sophisticated parties, represented by major law firms, who were informed years ago that their purported service was legally defective by Defendants and this Court, yet consciously chose to take no action.  *Cf. Cassano v. Altshuler*, 186 F. Supp. 3d 318, 322 (S.D.N.Y. 2016) (dismissing *pro se* claims absent explanation for improper service after being "provided ample indicators that it was incumbent upon them to properly serve").  It is time to dismiss their unserved Actions against Swiss Defendants.

### CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court dismiss the Amended Complaints and grant such other relief that the Court deems just and proper.

Dated: June 19, 2020
      New York, New York

Respectfully submitted,

CLEARY GOTTLIEB STEEN &
HAMILTON LLP

By: */s/ Thomas J. Moloney*
      Thomas J. Moloney
      Joseph M. Kay
      Christine M. Jordan

      One Liberty Plaza
      New York, New York 10006
      T: 212-225-2000
      F: 212-225-3999
      tmoloney@cgsh.com
      jkay@cgsh.com
      cjordan@cgsh.com

      Nowell D. Bamberger
      (admitted *pro hac vice*)

      2112 Pennsylvania Avenue, N.W.
      Washington, D.C. 20037
      T: 202-974-1500
      F: 202-974-1999
      nbamberger@cgsh.com

*Counsel for HSBC Institutional Trust Services (Asia) Limited, Robinson and Company, Murdoch and Company, Republic Nominees Limited (f/k/a HSBC Private Banking Nominee 1 (Jersey) Limited), HSBC Securities Services (Luxembourg) S.A., HSBC Private Bank (C.I.) Limited (f/k/a HSBC Private Bank (Guernsey) Limited), Republic Nominees Limited, HSBC Private Bank (Suisse) S.A., HSBC Bank USA, N.A., HSBC Trust Company AG (f/k/a HSBC Guyerzeller Trust Company AG), HSBC Latin America Holdings (UK) Limited (successor-in-interest to HSBC Securities (Panama) S.A.), HSBC International Trustee Limited, Somers Nominees (Far East) Limited, and HSBC Bank Bermuda Limited*